# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **MCKINNEY SALVAGE LLC** | **CASE NO. 2:23-CV-00626** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SOUTHWEST MATERIALS INC.** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment (Doc. 12) filed by the Plaintiff, McKinney Salvage LLC ("McKinney"). The Defendant, Southwest Materials Incorporated ("Southwest"), opposes the motion. Doc. 14.

### BACKGROUND INFORMATION

This matter arises from a dispute involving an alleged maritime contract for salvage services. McKinney alleges that it was hired by Southwest to raise Track Hoe Barge SMI 101 ("SMI 101") which had sunk at Mile 72 of the Mermentau River. Doc. 1 at ¶ 4. McKinney contends that it began work on or about July 2, 2021, and successfully raised the barge on or about July 9, 2021. *Id.* at ¶ 5. Following the salvage of SMI 101, McKinney issued an invoice to Southwest in the Amount of $207,886.99. *Id.* at ¶ 7; Doc 1-2 at 1. McKinney maintains that Southwest has refused to pay the amount despite demand in breach of the maritime contract. Doc. 1 at ¶¶ 8-9.

Southwest counters that no written contract exists between the parties, and it never agreed to the amount demanded by McKinney prior to the commencement of the work. Doc. 14-1 at 2, 5. Moreover, Southwest describes the charges as excessive, and the scope of work invoiced inconsistent with the actual work performed. Doc. 14-1 at 5. Further,

Southwest indicates that it expected its insurer to pay for the work performed and would not have proceeded with the work proposed by McKinney if it had known the insurer would deny the claim. Doc. 14-1 at 6.

McKinney moves for partial summary judgment on the issue of liability for breach of a maritime contract. Doc. 12. Southwest maintains that genuine issues of material fact remain preventing summary judgment on the issue. Doc. 14 at 11.

### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

### A. Maritime Contracts

The Court must first determine that the alleged contract in question is a maritime contract sufficient to provide jurisdiction pursuant to 28 U.S.C. § 1333.[1] "[T]he boundaries of admiralty jurisdiction over contracts – as opposed to torts or crimes – being conceptual rather than spatial, have always been difficult to draw." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004) (quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)). In general, the determination of whether a contract is a maritime contract is dependent upon "the nature and character of the contract" and whether the contract references "maritime service[s] or maritime transactions." *Earnest v. Palfinger Marine USA, Inc.*, 90 F.4th 804, 810 (5th Cir. 2024) (quoting *North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125 (1919)); *Norfolk*, 543 U.S. at 24. In this instance, Southwest's barge SMI 101 was on navigable waters, the Mermentau River. Additionally, salvaging a barge involves traditional maritime activity, which is sufficient to determine that the alleged

---

[1] The determination of admiralty jurisdiction pursuant to 28 U.S.C. § 1333 is required to sustain this Court's jurisdiction over the case given that McKinney is a Louisiana limited liability company and Southwest is a Louisiana corporation.

Page 3 of 10

contract in this matter is maritime in nature. *See* 2 Thomas J. Schoenbaum, Admiralty & Marine Law § 16:6 (6th ed. 2022); *Puerto Rico Ports Auth. v. Umpierre-Solares*, 456 F.3d 220 (1st Cir. 2006) (contract to remove sunken ship from navigable waters is maritime in nature).

### B.  Whether a Maritime Contract was Formed

Before the Court can determine if a breach of a maritime contract occurred, it must first determine that a valid maritime contract exists. McKinney asserts that it does, while Southwest argues that it remains a genuine dispute of material fact as to whether a contract exists between the parties. In determining whether a contract exists the Court must apply general maritime law, which is federal law. *Int'l Marine, LLC v. FDT, LLC*, 619 F. A'ppx 342, 349 (5th Cir. 2015). "Federal maritime law 'stems from the maritime jurisprudence of the federal courts, and is an amalgam of traditional common law rules, modifications of those rules, and newly created rules drawn from state and federal sources.'" *Id.* (quoting *One Beacon Ins. Co v. Crowley Marine Services, Inc.*, 648 F.3d 258, 262 (5th Cir. 2011)). The application of federal law "in the contract context includes looking to 'principles of general contract law' that can be found in treatises or restatements of the law." *Id.* (quoting *Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014)). State contract law may be applicable to maritime contracts, but only to the extent that it is not inconsistent with admiralty principles. *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995).

The elements of contract formation under general maritime law require the establishment of (1) an offer, (2) acceptance, and (3) consideration. *In re Tasch, Inc.*, 46 F.

App'x 731, 2002 WL 1973464 at *3 (5th Cir. 2002) (citing John D. Calamari & Joseph M. Perillo, Contracts §§ 2.1, 4.1 (4th ed. 1998)). An offer is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1) (1981). Acceptance is a "manifestation of assent to the terms" offered. *Id.* at § 50(1). A performance which is bargained for in exchange for a promise is consideration. *Id.* at § 72.

During discovery, Southwest made numerous admissions in response to McKinney's Request for Admissions that are relevant in the determination of contract formation. Federal Rule of Civil Procedure 36(b) specifies that any matter admitted is "conclusively established." *Am. Auto Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991); *Armour v. Knowles*, 512 F.3d 147, 154 n. 13 (5th Cir. 2007). "An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible." *Am. Auto*, 930 F.2d at 1120. Admissions on file may serve as a basis for summary judgment. *Le v. Cheesecake Factory Restaurants, Inc.*, 2007 WL 715260, at *4 (5th Cir. Mar. 6, 2007) (citing Fed. R. Civ. P. 56(c)).

Southwest admits that it "contracted with McKinney to request salvage services by means of McKinney's heavy lift derricks to raise Southwest's Track Hoe Barge SMI 101, which was then sunken at Mile 72 of the Mermentau River." Doc. 12-3 at No.1. Southwest admits that in response to this request McKinney presented two possible options with

descriptions of each. *Id.* at No. 2. The options were sent by email on June 30, 2021, from Aaron McKinney, Vice President of McKinney, to Chad Alcock, the employee assigned by Southwest to oversee the salvage efforts, and stated:

> Thank you for the opportunity to bid this project, McKinney Salvage can provide recovery services to re-float Trackhoe barge located on the Mermentau river.
>
> Proposal 1
> Divers attempting to place salvage hatches and refloat.
>
> Cost: $15,000 per day plus materials at cost plus 20%
> Available to start Friday morning July 2nd.
>
> Proposal 2
> Mobilize salvage equipment from Baton Rouge, La to Mermentau river, Southwest Materials. (Two 300 ton Aframe Derrick barges and one assist crane.) Equipment will mobilize upon request
>
> Cost:
> Mobilization $15,000 per day estimated 2 day travel time.
> Working day rate: $30,000 per day plus divers
> Demobilization from Mermentau river Southwest materials to Baton Rouge.
> Cost: $15,000, estimated 2-day travel
>
> Note: In the Salvage Masters opinion, it is highly unlikely due to the age, wear, and weight on deck of barge that it will pump up.

Doc. 14-2 at 1, ¶ 1; 14-2 at 15-16; Doc. 14-7 at 3-4. Southwest admits that Chad Alcock accepted "option 1" on behalf of Southwest via email on or about June 30, 2021. Doc. 12-3 at No. 3. Specifically, Alcock stated in his email response to the bids: "I spoke with Drew Guinn/Owner and he said he wants to go with proposals [sic] number one." Doc. 12-2 at 6. Aaron McKinney acknowledged the choice responding, "Received thank you." *Id.*

When "option 1" was unsuccessful, Southwest admits that Chad Alcock accepted McKinney's proposal to proceed with "option 2." Doc. 12-3 at No. 5. This is also

supported by emails in the record, which show that on July 4, 2021, Aaron McKinney emailed Chad Alcock noting the failed attempt to refloat by option 1 and requesting a reply to proceed with option 2. Doc. 12-2 at 7. Shortly thereafter, Chad Alcock responded: "Yes that is correct. See you in about 48 hours." *Id.*

Southwest argues, despite their admissions and associated emails, that there is no written contract between the parties. Doc. 14 at 6. However, a formal writing is not required for a contract to exist under maritime law. "Courts have consistently held that maritime law generally regards oral contracts as valid." *In re Tasch, Inc.*, 2002 WL 1973464 at *3 (citing *Kossick*, 365 U.S. 731). Southwest's admissions and the associated emails between Alcock and McKinney are sufficient to establish that a valid contract was formed. There was an offer by McKinney to perform services at a certain price. Chad Alcock accepted the offer on behalf of Southwest when he instructed Aaron McKinney to proceed with option 1 and option 2. Consideration for the contract exists in the form of Southwest's agreement to pay the rates as proposed in McKinney's original June 30, 2021, email in exchange for McKinney's agreement to perform the salvage of the SMI 101.[2] As such, the Court finds that a valid maritime contract was formed between McKinney and Southwest.

---

[2] The Court also notes that the parties Rule 26(f) filing contains the following stipulation: "Southwest Materials contracted with Plaintiff McKinney Salvage to provide salvage services by means of McKinney's heavy lift derricks to raise Southwest's Track Hoe Barge SMI 101 which was then sunken at Mile 72 of the Mermentau River." Doc. 7 at 3.

### C. Alleged Breach of the Maritime Contract

"To establish breach of a marine contract, a plaintiff must demonstrate '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages.'" *In re Chester J. Marine, LLC*, 636 B.R. 704, 715 (Bankr. E.D. La. 2021) (quoting *W. Towboat Co. v. Vigor Marine, LLC*, 544 F.Supp.3d 1100, 1116 (W.D. Wash. 2021)); *In re B & J Inc.*, 672 F.Supp.3d 192, 210 (W.D. La. 2023).

McKinney argues that liability for breach of a maritime contract is clearly established based on Southwest's admissions on the record in its Responses to Requests for Admissions pursuant to Federal Rule of Civil Procedure 36(a).  12-1 at 6.  In addition to the admissions previously discussed, McKinney notes that Southwest also admitted the following facts: (1) "the salvage services were performed pursuant to agreed rates and charges;" (2) "McKinney issued a Final Invoice dated July 21, 2021…;" (3) Southwest received the Final Invoice; and (4) "Southwest has failed to pay McKinney any portion [] of the invoice." Doc. 15 at 2-3; Doc. 12-3, Nos. 9-10, 12, 15.  Based on these admissions, McKinney maintains that by failing to pay what is contractually owed, Southwest is liable for breach of a marine contract and summary judgment as to liability is appropriate.  Doc. 12-1 at 3.

In response, Southwest argues that the scope of the actual work performed or discussed in the email exchange is markedly different from what McKinney presented in the invoice.  Doc. 14 at 7.  Specifically, Southwest contends that it was charged for an extra diver to assist with option 1 on July 2, 2021.  *Id.*   It also argues that McKinney's invoice

included excessive charges from River Services Company, unauthorized equipment charges, and a 20% surcharge on the bill from River Services Company. *Id.* at 7-8. Southwest also maintains that McKinney billed four days of equipment mobilization at $15,000/day when only two days were proposed, and that McKinney's invoice reflects that it left the job site on July 9, 2021, when it actually left the job site on July 8, 2021. *Id.* at 8. Southwest also disputes that McKinney utilized two A Frame derricks in its salvage efforts. *Id.* Finally, Southwest states that if it had known that its insurance carrier, XL Specialty, would deny its claim in relation to the SMI-101, it would not have told McKinney to proceed with the work.[3] *Id.* at 9

Southwest argues a breach of the contract cannot be determined on summary judgment because genuine issues of material fact remain regarding the discrepancy between the services contained in McKinney's invoice and those that were actually performed. While Southwest admits that McKinney performed work on its behalf and that McKinney issued an invoice, Southwest disputes the extent of the contract claimed by McKinney and the amount due, as detailed above. *Id.* at 12-13.

Based on Southwest's admissions contained in the record, the Court finds that all elements for breach of a marine contract have been established. As noted above, a contract existed between McKinney and Southwest for the recovery of the SMI-101 at the rate contained in the email exchange. There is no factual dispute that McKinney performed

---

[3] Southwest also notes an alleged conflict of interest between Fred Budwine, the marine surveyor hired to assist with the recovery of SMI-101, and XL Specialty Insurance Company. Doc. 14 at 9, 15-16. This information is relevant to the related litigation concerning the denial of Southwest's insurance claim for the SMI-101 that is also pending with this Court. *See* Civil Action No. 2:22-cv-02310, *Southwest Materials, Incorporated v. XL Specialty Insurance Company*. However, it does not change the analysis concerning the existence of a contract or breach thereof.

salvage services in the manner described in the email exchange to raise the SMI 101 or that Southwest has not paid McKinney for those services in the amount agreed upon in the email exchange. Despite Southwest's concern regarding billing outside the scope of the emails or inflated charges, a failure by Southwest to pay any portion of the undisputed amount is a breach of the marine contract. McKinney has suffered damage from Southwest's refusal to pay any amount of the invoice for the successful recovery of the SMI-101. As such, summary judgment for breach of contract is warranted in McKinney's favor.

Importantly, this Court makes a finding only as to liability for breach of contract, not the amount of damages that should result. Genuine issues of material fact remain as to whether McKinney performed all of the services listed in the invoices and whether Southwest was overcharged for divers, materials, or transport days as argued by Southwest.

## CONCLUSION

For the reasons stated herein, McKinney's Motion for Partial Summary Judgment (Doc. 12) will be **GRANTED**.

**THUS DONE AND SIGNED** in Chambers on this 17th day of April, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**